UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ROGER KINNERSON, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>JOHN BARWICK[1], )<br>)<br>Respondent. ) | No. 1:25-CV-1412 |

**ORDER**

On July 31, 2025, *pro se* Petitioner Roger Kinnerson filed a Motion to Vacate pursuant to 28 U.S.C. § 2254. D. 1. Now before the Court is the Government's Motion to Dismiss the Petition, D. 13, and Kinnerson's Motion to Contest the Motion to Dismiss, D. 18.

For the reasons below, Kinnerson's Motion to Contest the Motion to Dismiss is GRANTED, the Government's Motion to Dismiss is GRANTED, and Kinnerson's § 2254 Petition is DENIED as untimely.

**I.    BACKGROUND**

In April 2016, Kinnerson was tried for two counts of aggravated domestic battery in the Circuit Court of McLean County. The charges stemmed from allegations that Kinnerson attacked his mother, Patricia Karr. Karr did not testify at trial. Rather, the State relied on Karr's 911 call made on the night of the incident. Ultimately, a jury convicted Kinnerson of one count aggravated

---

[1] In his Motion to Vacate, Kinnerson named Illinois Department of Corrections as the respondent. D. 1 at 1. However, the proper defendant in a motion to vacate is the petitioner's immediate custodian, commonly the person with "day-to-day control over the prisoner." *Robledo-Gonzales v. Ashcroft*, 342 F.3d 667, 673 (7th Cir. 2003) (internal quotations omitted); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("[L]ongstanding practice confirms that in habeas challenges to present physical confinement-"core challenges"-the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official."). Here, Kinnerson is incarcerated at that the Pinckneyville Correctional Center and thus, his immediate custodian is the warden of that facility, John Barwick. *See Kholyavskiy v. Achim*, 443 F.3d 946, 949 (7th Cir. 2006) ("Typically, for an inmate of a jail or prison, his immediate custodian is the warden."). Thus, the Clerk is DIRECTED to substitute John Barwick for the Illinois Department of Corrections as respondent.

1

domestic battery resulting in great bodily harm. On December 16, 2016, he was sentenced to twenty-five years' imprisonment. Kinnerson moved for reconsideration of his sentence and the trial court denied his post-sentencing motion in August 2017. Kinnerson later appealed his conviction, but it was affirmed by an Illinois appellate court on May 14, 2020. Kinnerson then filed a petition for leave to appeal ("PLA") in the Illinois Supreme Court.

In February 2018, when Kinnerson's PLA was still pending, he filed a petition for relief from judgment under 735 ILCS 5/2-1401(f) with the trial court. In this petition, Kinnerson raised a variety of issues including a challenge to the admission of the 911 transcript at trial. Kinnerson argued that the transcript presented to the jury was modified, despite the operator's testimony that it was a complete and accurate representation of the call. The trial court dismissed this petition, and the Illinois Appellate Court affirmed the dismissal on May 26, 2020. Kinnerson did not file a PLA regarding this petition.

On May 26, 2021, the Illinois Supreme Court denied Kinnerson's PLA and he did not file a petition for writ of certiorari in the United States Supreme Court. On November 9, 2021, Kinnerson filed a postconviction petition pursuant to 725 ILCS 5/122-1.[2] The trial court dismissed the petition, and the Illinois appellate court affirmed on August 15, 2024. Kinnerson did not file a PLA with the Illinois Supreme Court.

On July 31, 2025, Kinnerson filed the present Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. D. 1. In his petition, Kinnerson raises the following constitutional arguments: (1) the State's attorney deleted exculpatory evidence from the 911 recording, submitted the fabricated

---

[2] The Court did not formally file Kinnerson's petition until November 15, 2021. However, under the prisoner mailbox rule, a *pro se* prisoner's filing is "deemed filed at the moment the prisoner places it in the prison mail system, rather than when it reaches the court clerk." *Taylor v. Brown*, 787 F.3d 851, 858 (7th Cir. 2015). Courts have extended this rule to petitions for state postconviction relief so long as the state law does not clearly reject the rule. *See Ray v. Clements*, 700 F.3d 993, 1005–06 (7th Cir. 2012). Thus, Kinnerson's 725 ILCS 5/122-1 will be considered filed on November 9, 2021.

version at trial, and a transcript of this edited version was provided to the jury; (2) Kinnerson's trial counsel did not honor his request for a bench trial, as opposed to a jury trial; (3) his counsel had a conflict of interest because he previously was a detective for McClean County; (4) "the [S]tate's witnesses failed to corroborate their testimony by any testimony from the alleged victim [] who did not appear or testify at any time;" (5) the trial court erred in allowing the 911 recording in violation of Kinnerson's right to confrontation; (6) the trial court erred in allowing the health care professions to testify as to the victim's injuries and their cause; and (7) his defense counsel was ineffective for deterring the victim from providing exonerating testimony.

## II.     DISCUSSION

Prior to reaching the Government's Motion to Dismiss, the Court will first address Kinnerson's recent Motion to Contest the Motion to Dismiss. D. 18. In his Motion, Kinnerson seeks to supplement his initial response to the Government's Motion to Dismiss. *Id*.; *see also* D. 17 at 2 ("I would ask this honorable Court to allow this motion to act as an addendum to the previously filed response[.]"). Upon review of the Motion, the Court will construe it as a motion to supplement and GRANTS Kinnerson's [18] request. With this issue resolved, the Court will now address the Government's Motion to Dismiss Kinnerson's habeas corpus petition.

### A.  Timeliness of Petition:

In its Motion to Dismiss, the Government urges the Court to dismiss Kinnerson's Petition as untimely. D. 13. The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes a one-year statute of limitations in which state court prisoners may bring § 2254 petitions. *See* 28 U.S.C. § 2244(d)(1). The statute of limitations period begins running from the latest of four potential moments:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

>(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* at § 2244(d)(1)(A)–(D).

The limitations period does not run, or is tolled, during the time in "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" *Id.* at (d)(2). Limitations periods are typically calculated under § 2244(b)(1)(A). *See Mayle v. Felix*, 545 U.S. 644, 662 (2005) (recognizing that limitations period is "ordinarily" calculated under subsection (A)).

Section 2244(d)(1)(A) consists of two prongs – the "conclusion of direct review" and the "expiration of time for seeking such review." *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). The United States Supreme Court has explained that each prong "relates to a distinct category of petitioners" as follows:

>For petitioners who pursue direct review all the way to this Court, the judgment becomes final at the "conclusion of direct review"—when this Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the "expiration of the time for seeking such review"—when the time for pursuing direct review in this Court, or in state court, expires.

*Id*.

Here, the Illinois Supreme Court denied Kinnerson's PLA on May 26, 2021. Kinnerson then had ninety-days to file a petition for certiorari to the United States Supreme Court. *Anderson v. Litscher*, 281 F.3d 672, 675 (7th Cir. 2002) ("[W]e believe that the ninety day period during which a petition for certiorari may be filed by a state prisoner falls within the meaning of section 2244(d)(1)(A) for purposes of calculating when the statute of limitations begins to run.").

Accordingly, Kinnerson's conviction became final and the AEDPA's one year statute of limitations began to run on August 24, 2021.

On November 9, 2021, seventy-seven days into § 2244(d)(1)(A)'s one-year window, Kinnerson filed his postconviction petition which tolled the statute of limitations.[3] *See* 28 U.S.C. § 2244(d)(2). Kinnerson's statute of limitations resumed on August 15, 2024, when the Illinois appellate court dismissed the postconviction petition and he did not file a PLA. *Patterson v. Adkins*, 124 F.4th 1035, 1045 (7th Cir. 2025) (resuming statute of limitations clock on the date of the appellate court's decision where no PLA was subsequently filed).

Thus, Kinnerson then had 288 days, or until May 30, 2025, to file a § 2254 petition.[4] He did not do so until July 25, 2025, making the present Petition untimely.

As noted, the statute of limitations for a habeas corpus petition may alternatively start at "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Kinnerson argues, in part, that the State withheld exculpatory portions of the 911 transcript, and it was not until after his trial that he discovered the concealment. However, this does not alter the above analysis because Kinnerson discovered this new evidence prior to the finalization of his conviction. As the Government notes, Kinnerson raised this issue in his §2-1401 post-conviction petition filed on February 2, 2018. *See* D. 13-4 at 1, 6 (stating that Kinnerson received the full 911 transcript from

---

[3] As discussed, Kinnerson filed subsequent post-conviction petitions after his November 9, 2021, filing. However, these petitions were filed and resolved during the pendency of Kinnerson's November 9 filing. Thus, these later petitions provide no additional tolling benefit under 28 U.S.C. § 2244(d)(2).

[4] In his Motion to Contest, Kinnerson argues that the one-year limitation did not begin to run until August 15, 2024, when the Appellate Court denied his postconviction petition. However, his argument overlooks the seventy-seven days that had already passed prior to the filing of the postconviction petition. *See Patterson*, 124 F.4th at 1045 (deducting the amount of time between the final conviction and the filing of the postconviction petition from the petitioner's statute of limitations).

the state prior to the filing). Thus, because Kinnerson discovered the factual predicate prior to the finalization of his conviction, it cannot inform the statute of limitations calculation. *See* 28 U.S.C. § 2244(d) (noting that the "limitation period shall run from the *latest* of" either "the date the on which the judgment became final" or the date on which the factual predicate of the claim could have been discovered) (emphasis added).

### B. Actual Innocence Exception

Kinnerson does not pursue an equitable tolling argument in any of his filings. Upon its careful review, the Court does not find that any of these exceptions apply but one warrants further discussion. Kinnerson implies that he is innocent, noting that the victim, his mother, attempted to testify that he did not assault her.

The Supreme Court has held that actual innocence provides an equitable exception to AEDPA's statute of limitations. *See McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013) ("Actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar…or…expiration of the statute of limitations."). An actual innocence claim "requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, (1995). Petitioner must also demonstrate that, given this new and reliable evidence, no reasonable juror would have found him guilty beyond a reasonable doubt. *Id*. at 329.

Kinnerson does not explicitly pursue an actual innocence claim but rather argues that his counsel was ineffective for discouraging his mother from testifying to his innocence. Absent any claim from Kinnerson, this Court cannot piece together a persuasive actual innocence claim on the current pleadings. Kinnerson claims that his mother wanted to testify that he did not attack her but

6

does not provide any evidence to support this claim beyond a handwritten letter allegedly from his mother sent to him prior to her death. *See* D. 1 at 22–29. Though Kinnerson classifies this letter as a "dying declaration," it does not mention the assault or Kinnerson's trial. *Id*. at 19. Even assuming that this letter constitutes reliable evidence, the closest reference it makes to Kinnerson's conviction is "I want you to win your appeal. I'm scared of what your lawyer said." *Id*. at 23. Though this is consistent with Kinnerson's narrative, it alone would not persuade any reasonable jury against a guilty verdict.

For these reasons, the Court finds that the above statute of limitations analysis controls and that Kinnerson's Petition is untimely.

### III.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing § 2254 proceedings require the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." As such, the Court must determine whether to grant Petitioner a certificate of appealability under 28 U.S.C. § 2253(c)(2). Under the AEDPA, a certificate of appealability "may not issue 'unless the applicant has made a substantial showing of the denial of a constitutional right.'" *Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (quoting 28 U.S.C. § 2253(c)). For cases in which a district court denies a habeas claim on procedural grounds, the habeas court should issue a certificate of appealability only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

Consistent with the discussion above, the Court finds that no reasonable jurist would find that Kinnerson's Petition was not barred by the statute of limitations. Kinnerson had one year from the date his judgment became final to file a habeas petition under § 2254, but he did not do so, and

7

no exemptions to the applicable statute of limitations apply. Accordingly, his § 2254 Petition is untimely and this Court declines to certify any issues for appeal pursuant to § 2253(c)(2).

## IV.    CONCLUSION

For the above reasons, Kinnerson's [18] Motion to Contest the Motion to Dismiss is GRANTED, the Government's [13] Motion to Dismiss is GRANTED. Thus, Kinnerson's [1] § 2254 Petition is DENIED as untimely and this Court declines to certify any issues for appeal pursuant to § 2253(c)(2).

ENTERED this 12th day of January 2026.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge